NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**BRIDGET ELIZABETH WILLIAMS,**

          **Plaintiff,**

**v.**                                            **Case No. 6:17-cv-618-Orl-28KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Bridget Elizabeth Williams, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 13, 15, and the parties' Joint Memorandum, Doc. No. 17.[1]

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 16. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

## PROCEDURAL HISTORY.

In 2012, Williams filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and under the Supplemental Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.* She alleged in the OASDI application that she became disabled on January 1, 2010, R. 228, and in the SSI application that she became disabled on April 1, 2005, R. 230. She subsequently amended the disability onset date to May 10, 2013, the date of her fiftieth birthday. R. 43, 261.

After her applications were denied originally and on reconsideration, Williams asked for a hearing before an Administrative Law Judge ("ALJ"). R. 146. An ALJ held a hearing on November 20, 2015. Williams, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 39-76.

After considering the hearing testimony and the evidence in the record, the ALJ issued a decision. R. 20-32. The ALJ found that Williams was insured under OASDI through December 31, 2013. R. 22. The ALJ determined that Williams had not engaged in substantial gainful activity since the alleged amended disability onset date. *Id.*

The ALJ found that Williams had the following severe impairments: disorders of the spine, obesity, bipolar disorder, depression, and obstructive sleep apnea with a history of insomnia. *Id.* The ALJ also discussed the diagnosis of schizoaffective disorder and evidence of auditory hallucinations. *See, e.g.,* R. 26. The ALJ concluded that Williams did not have an impairment or combination of impairments that met or equaled an impairment listed in SSA regulations. R. 23.

NOT FOR PUBLICATION

With respect to Williams' mental impairments, the ALJ concluded that she would have moderate limitations in activities of daily living, social functioning and concentration, persistence or pace. She had suffered no episodes of decompensation. R. 23.

The ALJ found that Williams had the residual functional capacity ("RFC") to perform light work, as follows:

> [N]o climbing of ladders, ropes, or scaffolds. She is limited to frequent balancing, stooping, kneeling, crouching and crawling. She must avoid concentrated exposure to extreme cold, humidity, vibration, use of moving machinery, and exposure to unprotected heights. Work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple work related decisions and routine workplace changes. She is limited to occasional interaction with the public and coworkers, and only occasional supervision. She is limited to positions with a sit/stand option, defined as allowing a person to sit or stand alternatively, at will, provided an individual is within employer tolerances for off task behavior.

R. 24. In making this determination, the ALJ found that Williams' "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 26.

The ALJ found that Williams could not perform her past work as a nurse assistant and home attendant. R. 30. After considering the testimony of the VE, the ALJ concluded that Williams could perform light, unskilled work available in the national economy, specifically Paper Pattern Folder, Assembler Electrical Accessories, and Marker II, all of which were available in the national economy. R. 31. Therefore, the ALJ concluded that Williams was not disabled. *Id.*

Williams requested review of the ALJ's decision by the Appeals Council. R. 15. On February 17, 2017, the Appeals Council found no reason to review the ALJ's decision. R. 1-3.

Williams now seeks review of the final decision of the Commissioner by this Court.

NOT FOR PUBLICATION

## JURISDICTION AND STANDARD OF REVIEW.

Williams having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the ALJ's decision and the Joint Memorandum, which statement of facts I incorporate by reference. Accordingly, I will only summarize facts pertinent to the issues raised to protect Williams' privacy to the extent possible.

Williams was born in 1963. R. 228. She attended school through the tenth grade and obtained a GED. R. 42. She stopped working in 2013. R. 47.

Williams was injured in a motor vehicle accident ("MVA") in April 2014. R. 47, 566. During the ALJ's hearing, she complained of severe neck and back pain and difficulty walking. She also had headaches. She reported that medication made her groggy. R. 48, 61. She testified that she had been treated for mental impairments for eleven or twelve years. R. 49.

Williams estimated that she could lift less than ten pounds. She could sit or stand three or four minutes before needing to move. She could walk about two or three minutes. R. 51-52. She used a cane prescribed by a physician. R. 52. She had difficulty using stairs. *Id.* It hurt to bend. R. 64.

NOT FOR PUBLICATION

As for mental impairments, Williams testified that she had difficulty dealing with other people. R. 53. She heard voices. R. 65.

During a typical day she did not wake up until noon or 1:00 p.m. During the day she would watch television. R. 55. She could dress herself, sometimes with assistance, and bathe herself. R. 57. On days when she did not want to do anything, she did not always care for her personal hygiene. R. 66. She could prepare simple meals. Others performed household chores. R. 57. She had a driver's license, but she did not drive. R. 58. She lived with her mother and an eight-year old child of a friend. Her mother cared for the child but Williams indicated that she watched the child when she was in the house with him. R. 53-55.

Records in the file indicate that Williams was diagnosed with Bipolar Disorder in 2004. R. 349. She was also hospitalized in 2004 for depression. R. 382.

During the alleged disability period, Williams was treated at Stewart-Marchman-Act Behavioral Healthcare ("ACT") by Theodore Matejka, ARNP-BC. During the alleged disability period, she reporting hearing voices and indicated that she occasionally felt depressed. *E.g.,* R. 469, 472. ARNP Matejka diagnosed chronic schizoaffective disorder. R. 475. In September 2013, he rated her global assessment of functioning ("GAF") at 65, which is indicative of only mild impairments in functioning. *Id.* Thereafter, Williams reported that medication decreased the frequency and severity of hearing voices at times, although she reported auditory hallucinations and depression in February and May 2015. *E.g.*, R. 445, 451, 469, 924, 926. In May 2015, ARNP Matejka adjusted Williams' medication. He offered to refer her for case management and/or therapy but Williams declined, stating "I don't want to talk to nobody." R. 927. ARNP Matejka's

NOT FOR PUBLICATION

GAF assessments consistently remained in the mild range (61-70).  *E.g.*, R. 448, 464, 471. Williams denied suffering side effects from medication.  R. 461.

Regarding physical impairments, an MRI in September 2013 revealed a bulging disc at L4-5.  R. 408.  A MRI of the cervical spine in January 2014 showed preexisting herniating discs at C3-4, C4-5 and C5-6 with mild to moderate stenosis.  R. 410.  After being involved in the MVA, Williams sought emergency department treatment for neck and low back pain.  R. 566.  The treatment note reflects slight lumbar midline tenderness and pain on palpation in the thoracic region. She had full range of motion in all extremities.  R. 567.  Williams declined pain medication, and she was discharged.  R. 568.

In August 2014, Williams had a surgical consultation with John Ortolani, M.D.  He noted that an MRI of her head showed significant microvascular disease with Chiari I malformation. Upon examination, he observed cervical and lumbar muscle tenderness with spasms.  Williams had reduced grip strength in her left hand.  Dr. Ortolani opined that this was evidence that Williams had had a stroke and that she also had lumbar and cervical radiculopathies.  R. 546-57.

An EMG/nerve conduction study performed in October 2014 revealed lumbar radiculopathy at L5-S1 and cervical radiculopathy at C5-6 on the left.  R. 549-554.

On October 27, 2014, Williams told John R. Parnell, M.D., that she had hip, back and leg pain.  She requested a cane.  R. 411.  It appears that Dr. Parnell authorized a single prong cane due to back pain.  R. 412.

In September 2015, Williams complained to Dr. Parnell of pain in both knees.  His diagnoses included degenerative joint disease ("DJD").  R. 939.

NOT FOR PUBLICATION

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, Williams asserts two assignments of error.  She contends that the ALJ erred in evaluating her mental impairments, because schizoaffective disorder is not included as a severe impairment at step two of the sequential evaluation and because the ALJ failed to account for her auditory hallucinations in the functional capacity assessment, among other arguments.  She also argues that the ALJ did not articulate specific and adequate reasons to support the credibility finding.  These are the only issues I will address.

*Mental Impairments.*

As discussed above, the ALJ found that Williams had severe mental impairments of bipolar disorder and depression.  He also discussed the diagnosis of schizoaffective disorder, but he did not include it among her severe impairments.  The failure to include schizoaffective disorder in the severe impairments at step two of the sequential evaluation is not error because the finding of any severe impairment is enough to satisfy the requirement of step two.  *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

Williams also contends that the ALJ did not include limitations arising from her auditory hallucinations in the RFC assessment and hypothetical questions to the VE.  Counsel for Williams does not identify any specific functional limitations arising from the auditory hallucinations during the alleged disability period and, as the ALJ correctly observed, Williams reported that these hallucinations were decreased and less severe with medication.  During the ALJ's hearing, Williams did not testify that the voices she heard interfered with her ability to function.  Therefore,

the evidence is insufficient to establish that there were additional functional impairments from auditory hallucinations that were not included in the RFC assessment and in questions to the VE.

Additionally, counsel for Williams argues that the ALJ mischaracterized the ACT records by the finding that Williams "also declined case management and/or therapy, which further suggests satisfactory management of her symptoms." Doc. No. 17, at 13 (citing R. 26). The record reflects, however, that Williams did decline these services, stating that she did not want to talk to anyone. Counsel for Williams contends that Williams' statement is evidence of her social functional limitations, but counsel does not show how this single statement supports a finding that the ALJ should have included additional limitations on contact with others in the RFC assessment.

Finally, counsel for Williams argues that the ALJ erred by relying on GAF scores because the SSA has not endorsed those scores. Nevertheless, "[a] GAF score is part of a professional's opinion regarding the nature and severity of a claimant's impairment. The ALJ is required to consider these scores as part of the record as a whole." *Smith v. Comm'r of Soc. Sec.*, No. 6:10-cv-1478-Orl-31KRS, 2011 WL 6217110, at *6 (M.D. Fla. Nov. 1, 2011), *report and recommendation adopted*, 2011 WL 6217124 (M.D. Fla. Dec. 14, 2011), *aff'd*, 486 F. App'x 874 (11th Cir. 2012). Accordingly, the ALJ did not err by relying on the GAF scores in the decision.

For these reasons, I recommend that the Court find that the ALJ did not err in the evaluation of Williams' mental impairments.

*Credibility*.

In the second assignment of error, Williams contends that the ALJ relied on a mere boilerplate finding regarding her credibility, rather than articulating specific and adequate reasons

NOT FOR PUBLICATION

to support the finding that her reports of functional limitations were not entirely credible. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)

In the decision, the ALJ did rely on the following formulaic finding: Williams' "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 26. Elsewhere in the decision, however, the ALJ articulated specific and adequate reasons to support this finding. These include that (1) Williams reported improvement, although not complete resolution, of her auditory hallucinations; (2) Williams declined referral to case management and/or therapy; (3) GAF scores consistently indicated only mild functional limitations; (4) and, findings on physical examinations did not reflect significant, work-preclusive, impairments. R. 26, 28. Each of these reasons is supported by substantial evidence in the record. Additionally, the ALJ credited Williams' reported mental and physical functional limitations in the RFC by limiting Williams to a reduced range of light exertional work, simple work, routine workplace changes, and only occasional interaction with others. R. 24, 28.

For these reasons, I recommend that the Court find that the ALJ complied with the law and cited specific and adequate reasons to support the credibility finding.

### RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **AFFIRMED**. I further **RECOMMEND** that the Court direct the Clerk

Nᴏᴛ ꜰᴏʀ Pᴜʙʟɪᴄᴀᴛɪᴏɴ

of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

**Respectfully Recommended** this 29th day of June 2018.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE